[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The contested dissolution of this thirty-seven year marriage is CT Page 7345 focused primarily on dueling real estate appraisers and contradictory accountants. The basic issues are evaluation of assets and the allocation of alimony.
The issue of fault was raised, rendered about the impact of no fault divorce upon this traditional marriage. The Palazzo marriage was contracted in an age when marriage was for a lifetime and fault was a prerequisite for divorce. Before 1978, when the state legislature adopted our new morality of divorce on demand, John Palazzo would not likely have been able to divest himself of Antoinette. Fault in her marital behavior does not appear to exist. Erosion of their relationship, perhaps. Drifting of their interests, perhaps. But no notoriety, no misbehavior by this traditional wife, mother and housekeeper. It was simply John Palazzo's wish to move on, to change his life style from his suburban Wethersfield home to an East Hampton farm, and then to place himself in the company of a younger woman.
In severing his relationship with Antoinette, John Palazzo was exercising a right extended by our legislature. His intimate relationship with Christine Trumbull appears to have followed taking his leave of Antoinette.
This court can find no legal fault in the marital behavior of either party. Regret that Antoinette Palazzo, who fulfilled her marital role with all the energy and skill she possessed, now faces the twilight of here life without the comfort and assistance of the man to whom she dedicated those energies and skills, yes. But the issue raised by the legislature's statutes is fault, not regret.
The remaining issues are mathematical ones. How much is one-half of the Palazzo family's assets? How much alimony should Antoinette receive?
The parties have agreed that Antoinette and John Palazzo are each to receive one-half of the marital assets. Those assets involve four corporations and more than fifteen pieces of residential, commercial, industrial and unimproved real estate. Ten witnesses were presented during nine days of hearings, primarily a deal with real estate and corporate values.
With regard to valuation of the many parcels of real estate, this court finds the testimony of Henry Thomas, testifying for Antoinette Palazzo, to be the most credible. Robert McMahon, testifying for John Palazzo, an appraiser since 1987, submitted three separate evaluations for each contested parcel and offered a series of conflicting and changing values.
The court was struck by the clear social and economic allegiance of both Mr. Palazzo's staff and his long term accounting CT Page 7346 representatives. They were helpful in aiding the court to understand the role of corporate cash in weathering the current economic climate, among other issues. Their extended past relationship with Mr. Palazzo, however, and their potential future professional relationship was perceived by the court as a substantial factor in the thrust of their testimony. In the general accounting area, the court found Alec Bobrow's testimony to be the most credible.
The parties both propose that John Palazzo receive:
 a. Moodus Road, East Hampton, stipulated to have a value of $61,600 after deduction of its mortgage
The parties both propose that Antoinette Palazzo receive:
b. Midconn Stock, which the court values at $15,700;
 c. #405, The Mews, Wethersfield, stipulated to have a value of $45,600 after deduction of its mortgage;
 d. 75 Albert Avenue, Wethersfield, stipulated to have a value of $190,000 after deduction of its mortgage;
 e. 65 Albert Avenue Wethersfield, stipulated to have a value of $167,000 after deduction of its mortgage.
Each of the parties stipulate that 35 Beach Road, Southwick, Massachusetts, has a value of $1500 after deduction of its mortgage, Units 12 and 21 of Tabshey Court, Wethersfield each have a value of $121,000 and that Randy Lane, Wethersfield has a value of $104,000.
The court finds the forgiveness of John Palazzo's $125,000 note to his father, by means of his father's will, both drafted and executed simultaneously, was not in the nature of an inheritance.
The parties, in their stipulated values established for the residential properties set forth in paragraph 1, below, did not conjecture about the capital gains taxes that might become due at the time of sale. The court has elected to evaluate the corporate realty similarly. A considerable amount of thought has been given to the issue. Whether or not any property will be sold is uncertain. The time element granted in this decision for the non-residential properties is period of ten years. The rate of capital gains taxation on both the federal and state level can vary widely from year to year. President George Bush publicly advocates reducing them by fifty percent. Capital gains can also be effected by the generation of capital losses. This court cannot anticipate future capital gains taxes with a satisfactory degree of accuracy.
Having reviewed the substantial testimony, the sworn financial CT Page 7347 affidavits and the numerous exhibits in the context of the required considerations set forth in Title 46b Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a decree of dissolution shall enter and the following orders shall enter:
1. RESIDENTIAL REAL ESTATE To John Palazzo: 365 Moodus Road, East Hampton, Connecticut $ 61,600 35 Beach Road, Southwick, Massachusetts $ 1,500 To Antoinette Palazzo 405, The Mews, Wethersfield, Connecticut $ 45,600 65 Albert Avenue, Wethersfield, Connecticut $ 167,000 75 Albert Avenue, Wethersfield, Connecticut $ 190,000
2. PERSONAL ASSETS To John Palazzo: General Paving, Inc. Profit Sharing Plan $ 235,000 Loan receivable from General Paving, Inc. $ 15,600 Corporate interests $1,141,727 To Antoinette Palazzo: 2370 shares Midconn Bank $6.75 per share $ 16,000 Note from John Palazzo $ 510,414
CORPORATIONS:
3. GENERAL PAVING, INC. Based upon book values 1/31/91 and 6/30/91 $ 484,000 John Palazzo share (50%) $242,000
4. GENERAL REALTY COMPANY Assets: Cash $ 346,880 Investment in Grove-Hartford Assoc. Limited Partnership $ 45,000 Development bond $ 11,000 Mortgage receivable — CC Development Corp. $ 260,175 150 Dividend Road, Rocky Hill, Conn. $325,000 $ 246,920 mortgage 74,646 sewer 3,434 1218 Dividend Road, Rocky Hill, Conn. $386,000 $ 352,000 mortgage 34,000 1834-50 Silas Deane Hwy, Rocky Hill, Conn. $984,115/$79,180 mortgage 904,935 Unit 12, Tabshey Court, Wethersfield, Conn. value stipulated $ 121,000 Unit 21, Tabshey Court, Wethersfield, Conn. value stipulated $ 121,000 (Note: Mortgage on 1834-50 Silas Deane also covers Units 12 and 21 Tasbey Court.) CT Page 7348 Randy Lane, Wethersfield, Conn. value stipulated $104,000 Old Forge Road, Rocky Hill, Conn. $ 230,000 Lot #57 South Meadows Road, Wethersfield, Conn. value stipulated $ 1,750 $1,918,905 Liabilities: Note payable to General Paving profit sharing plan $ 233,286 Security deposits $ 7,090 Deferred tax obligation $ 52,000 $292,376 Total: $1,626,530 John Palazzo share (50%) $813,265
5. TPC DEVELOPMENT COMPANY Assets: Cash as of 5/31/91 $ 3,496 2071 Silas Deane Hwy, Rocky Hill, Conn. $ 630,000 mortgage 626,071 869 Mill Street, Berlin, Conn. $ 770,000 mortgage 535,750/$ 234,250 237,746 Liabilities: Security deposits $ 12,950 Total: 224,796 John Palazzo share (33%) $74,932
6. BEAVER ROAD ASSOCIATES Assets: Cash $ 46,120 2030 Beaver Road, Wethersfield, Conn. $1,207,000 -0- mortgage 1,187,000 Total: 46,120 John Palazzo share (25%) $11,530
8. CORPORATION SUMMARY — John Palazzo share GENERAL PAVING. INC. $ 242,000 GENERAL REALTY COMPANY $ 813,265 TPC DEVELOPMENT COMPANY $ 74,932 BEAVER ROAD ASSOCIATES $ 11,530 TOTAL: $1,141,727
9. NOTE FROM JOHN PALAZZO
a. The note from John Palazzo to Antoinette Palazzo in the amount of $510,414, paragraph above, shall carry interest at 6% per annum on the outstanding balance for the first three years, 7% per annum for the next three years and 8% per annum for the final four years. That interest is to be paid annually, on each anniversary of this judgment. Principle payments may be made in such amounts and at such times as John Palazzo shall elect, or, as follows:
1. Upon the sale of any of the properties listed in paragraph 9d, below, in an arm's length transaction. Upon the date of closing such CT Page 7349 sale, John Palazzo shall pay Antoinette Palazzo the amount cited in paragraph 9d for that property, or
2. Upon there financing any of the properties listed in paragraph 9d, below. Upon the date of such refinancing, John Palazzo shall pay Antoinette Palazzo fifty percent of the amount in excess of the up to date principle balance of the then current mortgage for that property, or
3. Payment in full of the entire principle balance no later than ten years from the date of this judgment.
b. Upon any sale by John Palazzo at any future time yielding more than the amount cited in paragraph 9d, below, for the property listed John Palazzo shall pay Antoinette Palazzo, on the date of said sale, an additional sum equal to twenty-five percent (25%) of the amount by which the gross sales price, after payment of the mortgage balance calculated as thought it were current at the time of sale, and the capital gains taxes actually paid, exceeds the amount cited.
c. Any sale claimed by wife not to be an arm's length transaction, shall have the value of said property determined by three appraisers, one chosen by each party, and the third chosen by the appraisers. The value of the property shall be the average of all three values and shall be binding upon the parties. The appraisal fees shall be shared equally by both parties.
d. Note payments: Property Amount due CC Development mortgage. $125,413 150 Dividend Road $ 70,000 1218 Cromwell Avenue $ 90,000 1834-50 Silas Deane -0- 12 Tabshey Court $ 50,000 21 Tabshey Court $ 50,000 Randy Lane $ 40,000 Old Forge Road $ 75,000 2071 Silas Deane -0- 869 Mill Street $ 10,000 20-30 Beaver Road -0- TOTAL: $510,413
10. ALIMONY
John Palazzo shall pay Antoinette Palazzo the sum of $535 per week as periodic alimony for a period of ten years.
11. AUTOMOBILES
Husband shall retain his Ford Pickup valued at $10,000. CT Page 7350 Wife shall receive title to the 1985 Lincoln she now drives, valued at $10,000.
12. ATTORNEY'S FEES
This litigation was extensive. It involved a considerable number of witnesses. Plaintiff faced the need to deal with employees, experts and an uncertain number of potential medical witnesses as well as the discovery necessary to become familiar with the many real estate and corporate entities involved. After considering the total financial resources of the parties in light of the criteria of 46b-62 and 82 of the Connecticut General Statutes, and further concerned that plaintiff's extensive fees will otherwise jeopardize the benefits of this judgment, this court awards Antoinette Palazzo attorney's fees of $40,000 to be paid forthwith. See paragraph 13, below.
13. PERSONAL CASH
The family cash at Liberty Bank, Connecticut National Bank, American Savings Bank and Midconn Bank totally approximately $118,000 after the distribution of $40,000 to Antoinette Palazzo towards her attorney's fees, shall be divided:
To John Palazzo: $ 38,000 To Antoinette Pallazzo: $ 80,000 and shall be paid forthwith.
Any differences shall be adjusted in proportion to the court's division (38:80.).
14. FURTHER NEGOTIATION.
The parties have shown a commendable ability to negotiate number of the issues they have faced. The court recognizes that the parties themselves may have mutual preferences that have not been revealed to the court during the trial and which the court may have inadvertently thwarted. Final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by. Therefore, the court empowers the parties to confer and seek mutually acceptable variations of the court's orders. Any such mutually negotiated modifications are to be submitted directly to the undersigned court officer in written form for approval within fifty days of this judgment, without costs and without the need to establish a substantial change of circumstances. Beyond that date, or before any other court, modification shall be by the traditional route and must meet the more formal requirements.
JOSEPH L. STEINBERG, JUDGE CT Page 7351